Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6319 | **DATE** | 3/29/2004 |
| **CASE TITLE** | | Taylor vs. Metra | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___ ___.
(3) ☐ Answer brief to motion due___ ___. Reply to answer brief due ___.
(4) ☐ Ruling/Hearing on ___ ___ set for ___ at ___.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(7) ☐ Trial[set for/re-set for] on ___ at ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1) .   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. For the reasons given in the attached memorandum opinion and order, the court grants defendant Metra's motion for summary judgment [42-1] on all claims. Case Terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 3 0 2004 | |
| | Notified counsel by telephone. | | date docketed | 59 |
| X | Docketing to mail notices. | | | |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RJ/KB | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL A. TAYLOR, )
)
        Plaintiff, )
)
v. ) Case No. 01 C 6319
)
NORTHEAST ILLINOIS REGIONAL ) Honorable Joan B. Gottschall
RAILROAD CORP., d/b/a METRA/ )
METROPOLITAN RAIL, ET AL., )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

DOCKETED MAR 30 2004

Plaintiff Michael Taylor sued his former employer, defendant Northeast Illinois Regional Commuter Railroad Corp. ("Metra"), for discriminating against him because of his race in violation of Title VII, 42 U.S.C. § 2000e, *et seq*. Before the court is Metra's motion for summary judgment which, for the reasons that follow, is granted.

### BACKGROUND

Taylor resigned from Metra on April 9, 2001, after working for the commuter rail service company for a little over three years. In November of 1997 Taylor applied for but was denied a paralegal job in Metra's legal department. In February of 1998 Metra hired Taylor as a cleaner of passenger rail coaches. In June of 1998 Taylor applied for and was denied a higher-paying litigation paralegal job in Metra's legal department. In November of 1998 Metra again posted a job opening for a paralegal. The posting described the minimum qualifications for the position and listed its duties, such as maintaining case files, filing papers in federal and state

59

courts, responding to certain discovery requests, drafting memoranda and form pleadings, and performing basic law research like cite-checking. The posting also advertised the paralegal job as level P8 with an expected salary in the "high twenties." Taylor applied for the position, and Metra awarded him the job. Taylor received a starting salary of $29,572 and began working as a paralegal in January of 1999.

Over time, Taylor and Metra became mutually dissatisfied with Taylor's work performance and conditions of employment. Disputes between Taylor and his supervisors in Metra's General Counsel's office grew out of Taylor's use of sick time and unpaid leave, his failure to account accurately for his time on daily time sheets, his time-consuming performance of court filings and other projects, and his lack of productivity due to excessive time away from the office and on the phone. Taylor offers an excuse for each incident of alleged under-performance but he does not dispute the underlying facts. Instead, he maintains that each time he and Metra faced a conflict about his work and Metra placed certain restrictions on Taylor, it was due to Metra's race discrimination and not his work performance. In particular, he points to the fact that he was required to fill out daily time sheets, get prior approval for unpaid leave, and sign in and out when he left the office during the work day as evidence of race discrimination. Further, Taylor alleges that he was given more work and was paid less than non-black paralegals.

Taylor filed a charge of discrimination with the EEOC on March 29, 2001, and this lawsuit on August 15, 2001. Taylor complains that Metra discriminated against him because of his race when it: (1) failed to hire him for a higher-paying paralegal position for which he was qualified and instead hired a white man, (2) paid him less and gave him lower annual

salary increases than non-black paralegals, (3) gave him more work than non-black paralegals, and (4) made him account for his work and vacation time more strictly than non-black paralegals. Metra moved for summary judgment, arguing that Taylor's claims are time-barred and that even if they weren't, its employment actions with respect to Taylor did not constitute racial discrimination.

## DISCUSSION

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). To withstand summary judgment on a Title VII claim, the plaintiff must "present sufficient evidence from which a jury could find that his employer acted with a discriminatory intent" in making employment decisions about the plaintiff. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Before discussing the merits of Taylor's discrimination claims, the court turns to Metra's assertion that Taylor's claims are untimely.

*Timeliness*

Title VII requires plaintiffs to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days after the conduct giving rise to the charge occurs. 42 U.S.C. § 2000e-5(e)(1); *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). However, the limitations period is calculated differently for claims based on discreet acts of discrimination or retaliation (such as termination, failure to promote, or refusal to hire) than for claims based on a hostile work environment. Specifically, a

plaintiff alleging a discrete discriminatory act will be time-barred if he files his charge more than 300 days after the objectionable act occurred, but a plaintiff alleging a hostile work environment will not be time-barred "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122.

Since Taylor does not plead his claims of discrimination in separate counts and does not distinguish between discrete acts and those contributing to a hostile work environment, the court must do it for him. First, in one of Taylor's allegations he states that he was not initially hired as a litigation paralegal, a P9 position that paid higher than his P8 paralegal position, because of his race. A failure to hire is a discrete act of discrimination that is subject to the 300-day statute of limitations. *Delaware State College v. Ricks*, 449 U.S. 250, 257-58 (1980) (holding that decision to deny tenure is discrete act and claim accrues at denial of tenure). Here, Taylor applied for and was denied the P9 paralegal position in June or July of 1998, but he did not file his charge with the EEOC until March 29, 2001. Since his EEOC charge was brought well outside the 300-day limitations period (which would have expired in April or May of 2000), Taylor's claim for discrimination based on Metra's failure to hire him for the P9 litigation paralegal position is time-barred.

Next, another of Taylor's allegations charges Metra with paying him less than non-black P8 level paralegals by not giving him a higher starting salary and by giving him lower annual salary increases. The Seventh Circuit has explained that for claims of discrimination based solely on disparate pay, each new paycheck received is "a fresh act of discrimination" and is not untimely simply because the initial act of discrimination occurred outside the

300-day limitations period. *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007, 1014 (7th Cir. 2003). To the extent that Taylor's charge of discrimination is based on his being hired as a P8 paralegal at a lower starting salary than non-black P8 paralegals, he states a strict paycheck claim. This means that checks received by Taylor within the 300-day limitations period which reflect Metra's initial decision to pay him less than non-black P8 paralegals will not be time-barred. *Reese*, 347 F.3d at 1013. But, to the extent that Taylor's charge of discrimination is based on his being given a lower annual salary increase than non-black P8 paralegals, he complains of discrete acts of discrimination that are subject to the 300-day limitations period. *Reese*, 347 F.3d at 1013 (explaining difference between simple pay allegation and one involving act of discrete discrimination, like refusal to promote or to give a raise). This means that Taylor potentially can recover only for discriminatory pay received after June 2, 2000 (the date 300 days prior to the filing of his EEOC charge), which in turn means only for his 2001 salary increase. *Hildebrandt v. Ill. Dept. of Natural Res.*, 347 F.3d 1014, 1028 (7th Cir. 2003).

Finally, as best as the court can tell, Taylor's remaining allegations of being assigned more work, having to sign in and out, fill out daily time sheets, and request prior approval for unpaid leave can be construed only as a claim for hostile work environment.[1] *Morgan*, 536 U.S. at 117 (defining hostile work environment claim as "a series of separate acts that collectively constitute one unlawful employment practice"). Thus, provided one of Taylor's

---

[1] Taylor never expressly pleaded a claim for hostile work environment. However, since he seemed to indicate in his response to Metra's motion to dismiss that he meant to plead hostile work environment, and since he does not introduce any new allegations to support his claim, the court will construe the assortment of complaints set out by Taylor, none of which on its own amounted to an adverse employment action, as pleading a hostile work environment claim.

allegations occurred after June 2, 2000, and the court considers each allegation part of one unlawful employment practice, all of his hostile work environment allegations may be considered in determining Metra's liability under Title VII. *Morgan*, 536 U.S. at 122. Assuming for the moment that Taylor's allegations are part of the same discriminatory employment practice and are severe enough to constitute an adverse action (more on this later), at least one of them occurred within the limitations period: Metra informed Taylor in writing in February of 2001 that he needed to complete his daily time sheets. Consequently, Taylor's hostile work environment claim is not time-barred.

*Merits*

The court next turns to the merits of Taylor's claims. Under Title VII discrimination can be proved by direct or indirect evidence. A plaintiff using the direct method may present either direct or circumstantial evidence that establishes outright a discriminatory reason for his employer's animus. *Venturelli v. ARC Community Servs., Inc.*, 350 F.3d 592, 599 (7th Cir. 2003). Direct evidence "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) (describing direct evidence as "eyewitness testimony as to the employer's mental processes"). Admissions of discrimination by employers are rarely found due to the fact that "most employers are careful not to openly discriminate and certainly not to publicly admit it." *Id.*

If the plaintiff lacks such direct evidence he may make his case based on indirect evidence, applying the burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* framework requires the plaintiff

first to establish a *prima facie* case of discrimination by demonstrating that he: (1) belongs to a protected class, (2) performed his job to his employer's legitimate expectations, (3) suffered an adverse employment action despite performing satisfactorily, and (4) received less favorable treatment than similarly situated employees outside the protected class. *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1030 (7th Cir. 2003). If the plaintiff succeeds, the burden shifts to the defendant to provide legitimate, non-discriminatory reasons for its conduct; and if the defendant succeeds, the burden shifts back to the plaintiff to show that the defendant's reasons were pretextual. *Rhodes v. Illinois Dep't of Transp.*, No. 03-1651, 2004 U.S. App. LEXIS 3668, at *10 (7th Cir. Feb. 26, 2004). Whether a plaintiff proceeds by either the direct or indirect method of proof, to recover under Title VII he must ultimately prove both that his employer's actions were unequivocally discriminatory and that he suffered a materially adverse employment action. *See id.* at *11.

Unlike most Title VII claimants, Taylor offers direct evidence of racial animus in support of his discrimination claim. Taylor maintains that Michael Noland, Metra's General Counsel and Taylor's hiring supervisor, told him "that he was the first African American male that was ever hired in the Legal department and that he would be held to a higher standard." Pl.'s L.R. 56.1 Statement of Facts ¶ 17. Metra denies that Noland made this statement and insists that Taylor is "misrepresenting a conversation regarding the use of sick time." Def.'s Resp. To Pl.'s L.R. 56.1 Statement of Facts ¶ 17. Though a dispute of material fact will preclude summary judgment, here the disputed fact is not material because its truth does not determine whether plaintiff or defendant is entitled to prevail as a matter of law. Even if the court accepts that Noland made the statement, and even if the court believes that

the statement is direct evidence that Metra intended to treat Taylor differently because of his race, the statement itself is not actionable under Title VII. To prevail on a Title VII claim, it is not enough to show that one's employer harbored racial animus; a plaintiff also must prove that his employer's animus had a material negative effect on the plaintiff's employment. This Taylor fails to do.

For Title VII purposes, an adverse employment action is a significant change in the plaintiff's employment status, such as a failure to hire, a retaliatory termination, a denial of a promotion, or a transfer to a lesser position. *Rhodes*, 2004 LEXIS 3668, at *11. In other words, it is workplace conduct that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993). Here, Taylor cannot complain of termination since he resigned from Metra, and of his remaining timely allegations, none complain of retaliation, demotion, or any other discrete adverse employment action.[2] Instead, he cobbles together numerous contentious workplace incidents that he believes were manifestly unfair and submits them as evidence of racial discrimination. Though he does not use the phrase, the court interprets these allegations in Taylor's complaint as forming a claim for a hostile work environment. In the context of a hostile work environment claim, the complained-of conduct must be so subjectively and objectively hostile as to materially interfere with or substantially alter the

---

[2] Taylor included discrete failure to hire and disparate pay claims in his complaint, but for the reasons stated earlier in this opinion, all but one of those claims are time-barred. The remaining pay claim arises from Taylor's assertion that he was given a lower annual salary increase than non-black paralegals. Though this is a discrete act, it does not on its own constitute an adverse action. The court will therefore consider it in conjunction with Taylor's hostile work environment claim. *See infra* pp.9.

plaintiff's conditions of employment or work performance. *Hildebrandt*, 347 F.3d at 1033-34. If the conduct is not so severely disruptive or hostile and is not aimed solely at a particular member of or an entire protected class, it is not an adverse action and will not support a Title VII claim.

It is questionable whether the conduct complained of by Taylor in this case, if proven, would rise to the level of hostility necessary to recover under Title VII. According to Taylor, his work environment was hostile because he was told at the time he was hired that he would be held to a higher standard because he was black and because he was the only Metra legal department employee: (1) required to obtain prior approval for unpaid leave; (2) required to sign in and out on a daily log sheet each time he left the office; (3) assigned to do more work than other paralegals; and (4) not given a higher annual salary increase in 2001. Standing alone, Taylor's allegations, which are assumed to be true, do not rise to the level of an adverse employment action based on a hostile work environment. *Rhodes*, 2004 U.S. App. LEXIS 3668, at *11. These several occurrences did not materially alter the conditions of Taylor's employment and are not subjectively or objectively hostile. *Johnson v. Cambridge Indus. Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). As the Seventh Circuit said in *Rhodes*, "Not everything that makes an employee unhappy qualifies as an adverse action for Title VII, and this is particularly true [when the plaintiff] complains of assignments or tasks consistent with the job duties" required by plaintiff's position. 2004 LEXIS 3668, at *12 (internal citations omitted).

When viewed in light of Noland's statement that Taylor would be held to a higher standard because of his race, however, Taylor's allegations begin to look more like a an actionable hostile work environment claim. Proceeding under this view, which is favorable to

Taylor as the nonmovant, the court still needs from Taylor admissible evidence that Metra in fact gave him extra work, paid him a lower annual bonus, required him to sign in and out, and made him get prior approval for unpaid leave, <u>and</u> that Metra did not act this way toward its non-black paralegals, in order to find in Taylor's favor on a motion for summary judgment. Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). Here, Taylor offers no admissible evidence from which it may be inferred that any of the restrictions or limitations placed on him by Metra were imposed because of his race.

Taylor's evidentiary submissions in this case consist only of his Rule 56.1 Statement of Facts and his 2000 Annual Performance Appraisal. With respect to his allegations of a hostile work environment, Taylor offers as evidence only his own opinion, derived from statements allegedly made by co-workers, that other paralegals (he does not identify their race) were not subject to the same workplace conditions that he was; he cites no affidavits or deposition testimony of the co-workers on whose statements he wishes to rely. Out of court statements like these which are offered for their truth are hearsay and generally inadmissible, FED. R. EVID. 802; *Galdikas v. Fagan*, 342 F.3d 684, 695 (7th Cir. 2003), and Taylor does not offer an exception to this rule for the statements he relies on here. Neither does he offer any admissible evidence of how and under what circumstances he was treated differently than Metra's non-black paralegals. Instead, his Rule 56.1 Statement of Facts is riddled with conclusory statements which do not provide a sufficient factual basis for his legal claims. For example, Taylor states that he "was discriminated against by Metra on the basis of color and

race as he was the only employee in the Metra Law Department to have to sign in and out every time that he left the office." Pl's L.R. 56.1 Statement of Facts ¶ 35. In support of this allegation, Taylor points to his own deposition testimony where he explained that he had to sign in and out because he had missed a filing one day and no one knew where he was, so "From now on, I have to sign in and out any time I leave the office." Def. Ex. F at 124. Similarly, Taylor says that he was discriminated against because of his race "when he was assigned far more work than other paralegals," Pl's L.R. 56.1 Statement of Facts ¶ 25, but the deposition testimony Taylor offers to support this allegation discusses Taylor's filing of charges with the Illinois Department of Human Rights and makes no mention at all of work assignments. Def. Ex. F at 113, lines 16-19.

Nowhere in this summary judgment record is there admissible evidence that Metra actually held Taylor to a higher standard than non-black paralegals. Conclusory allegations like the ones offered by Taylor in his Rule 56.1 Statement of Facts tell the court nothing about the nature of Taylor's working conditions compared to others outside his protected class and are therefore insufficient to prove that any of Metra's employment actions toward Taylor amounted to discrimination. *See Hildebrandt*, 347 F.3d at 1036 ("bare allegations not supported by specific facts are insufficient in opposing a motion for summary judgment").

CONCLUSION

Because Michael Taylor has failed to timely file certain of his claims and has failed to present sufficient evidence in support of his remaining claims, he is not entitled to relief under Title VII. The court therefore grants summary judgment in favor of defendant Metra.

ENTERED:

JOAN B. GOTTSCHALL
United States District Judge

DATED: March 29, 2004